IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGORY SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-638-RJD |
| | ) | |
| ALFONSO DAVID and NURSE BLAKE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Gregory Scott, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Shawnee Correctional Center.  Plaintiff is proceeding in this action on one count of deliberate indifference against Dr. Alfonso David and Nurse Practitioner Blake Woods for allegedly persisting in prescribing Plaintiff the same cholesterol medication despite Plaintiff's repeated claims of discomfort, leading to permanent damage.

Defendants filed a motion for summary judgment on December 14, 2018 (Doc. 66). Plaintiff filed a response (Doc. 72), to which Defendants replied (Doc. 73).  For the reasons set forth below, Defendants' motion is **GRANTED**.

**FACTUAL BACKGROUND**

In July 2013, Plaintiff was transferred to Shawnee Correctional Center ("Shawnee") where the events at issue in this lawsuit occurred (Deposition of Plaintiff Gregory Scott, Doc. 67-1 at 10-11).  In December 2013, Dr. Vipin Shah (who is not a defendant in this action), prescribed Zocor (Simvastatin), a common statin medication, for Plaintiff's high cholesterol (Doc. 67-2 at 38-40).

Plaintiff was also prescribed Norvasc (amlodipine) to treat his high blood pressure (*see, e.g.*, *id.*). A side effect of Zocor is an increased risk of myopathy, muscle pains due to inflammation of the skeletal muscles (Doc. 71-8 at 1; Doc. 71-5 at 66). During the relevant time, the Zocor label included a warning that instructed prescribers not to exceed doses of 20 milligrams daily for a patient who is also taking amlodipine in any dosage (Doc. 71-8 at 1). This dosage limit is recommended because of the increased risk of myopathy a patient may experience if taking Zocor and amlodipine (*Id.* at 5)[1]. Also, the Zocor label indicated that Zocor therapy should be discontinued immediately if myopathy is diagnosed or suspected (*Id.*).

Plaintiff was prescribed high blood pressure medication and high cholesterol medication from December 2013 until the date of his retinal artery occlusion on December 5, 2015. However, Plaintiff refused his monthly prescription for Norvasc on July 26, 2014 and January 2, 2015, and refused his monthly prescription for Zocor on May 28, 2013, July 26, 2014, and March 1, 2015 (Doc. 71-4 at 30-33). The July 26, 2014 and March 1, 2015 signed "Medical Services Refusal" forms indicate that Defendant Dr. David explained to Plaintiff the risks, possible complications, and probable consequences of refusing treatment (*see id.* at 31, 33); however, Dr. David testified that he did not fill out these forms and he did not speak to Plaintiff about such information when the forms were signed (Doc. 67-8 at 81).

In August 2014, Defendant Dr. David reviewed Plaintiff's medical records and approved a series of blood pressure readings to be taken over the course of a week (Doc. 71-5 at 26-27). The series of blood pressure checks were ordered because Plaintiff was not taking his medication

---

[1] Although there is evidence in the record that Plaintiff complained of muscle aches while taking Zocor, there is no indication in the record that Plaintiff suffered or was diagnosed with myopathy as he did not present with palpable tenderness, visual redness, or visual swelling of his muscles (*see* Doc. 67-10 at 21-23).

(*Id.* at 31).   Dr. David was only involved in Plaintiff's medical treatment on one other occasion prior to December 5, 2015, when, on January 23, 2015, he prescribed Zocor for Plaintiff via a verbal order (Doc. 71-4 at 16).

Plaintiff first saw Defendant Nurse Practitioner Woods on December 29, 2014 at the chronic care clinic to address his high blood pressure (Doc. 67-4 at 14-15).   Plaintiff reported skipping some doses of his Norvasc and Defendant Woods advised him to remain compliant with his medication regimen (*Id.*).

On April 16, 2015, Plaintiff again saw Defendant Woods at the high blood pressure chronic care clinic (Doc. 67-4 at 16-17).   On this date, Plaintiff advised Defendant Woods that he was not taking Zocor because he was experiencing body aches (*Id.*).   Defendant Woods advised Plaintiff of the importance of taking his cholesterol medication and indicated he should take it at night to alleviate the body aches (*Id.*; Doc. 67-10 at 59-60).   Because Plaintiff's cholesterol was critically high at 312, Defendant Woods increased Plaintiff's dosage of Zocor (*Id.*).   During a sick call appointment with Defendant Woods on June 4, 2015 for a lab follow-up, Plaintiff indicated he did not get his Zocor refilled and did not know how to obtain the refill (Doc. 67-10 at 62-63; Doc. 67-2 at 80).   Defendant Woods advised Plaintiff on how to refill his medication and he ordered follow-up labs (*Id.*).   Defendant Woods also performed a physical examination that was unremarkable (*Id.*).

Plaintiff next saw Defendant Woods on October 6, 2015 at the hypertension chronic care clinic (Doc. 67-4 at 18-19).   Plaintiff reported that he had not had his medication for months and Defendant Woods noted that Plaintiff's hyperlipidemia was poor due to medication non-compliance (*Id.*).   Plaintiff was advised to take his medications as prescribed (*Id.*).   On October 13, 2015, Plaintiff saw Defendant Woods for a routine physical examination (Doc. 67-2 at 12-13).

Defendant Woods' findings were normal (*Id.*).   Defendant Woods changed Plaintiff's cholesterol prescription from Zocor to Pravachol (*Id.*).   Defendant Woods testified that he does not recall the reason for switching Plaintiff's medication (Doc. 67-10 at 40).   During a sick call appointment with Defendant Woods on November 20, 2015, Plaintiff reported that the Pravachol was better than the Zocor and he was no longer experiencing body aches (Doc. 67-2 at 85).   Defendant Woods noted that Plaintiff's cholesterol levels were stable and his blood pressure had improved (*Id.*).

On December 5, 2015, Plaintiff reported that he could not see out of his left eye and was sent to the healthcare unit and evaluated by optometrist Dr. Brummel (Doc. 67-2 at 86; Doc. 67-3 at 113).   On December 8, 2015, Plaintiff was diagnosed with a retinal artery branch occlusion by Dr. Faisel Ahmad (Doc. 67-3 at 60-61).   There are various risk factors for an ocular occlusion, including high blood pressure, high cholesterol, age, diabetes, drug use, and a sedentary lifestyle (Doc. 67-11 at 19-20).   No medical provider has opined on the specific cause of Plaintiff's ocular occlusion.

On December 30, 2015, following Plaintiff's ocular occlusion, Plaintiff presented at a sick call appointment with Defendant Woods with elevated blood pressure (Doc. 67-10 at 67).   Defendant Woods asked Plaintiff to show him his medication cards and, upon inspection, Defendant Woods determined Plaintiff had not taken all of his required doses and had not filled his most recent prescription for his cholesterol medication (*Id.* at 67-68).

**LEGAL STANDARDS**

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).  The Seventh Circuit has remarked that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

### Eighth Amendment Deliberate Indifference

The Eighth Amendment protects inmates from cruel and unusual punishment.  U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010).  As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with

a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first element, the following circumstances constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

An inmate must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

### DISCUSSION

Defendants contend judgment as a matter of law in their favor is warranted because: (1) Plaintiff did not suffer from a serious medical need as alleged in his Amended Complaint; (2)

Defendants were not deliberately indifferent to any claimed medical need; and (3) Plaintiff cannot survive summary judgment by relying on new theories that were not alleged in his Amended Complaint.

As a preliminary matter, the Court considers Defendants' arguments concerning Plaintiff's attempt to set forth new theories for recovery in opposition to their summary judgment motion. In his Amended Complaint, which was filed by assigned counsel on January 2, 2018 (Doc. 44), Plaintiff generally alleges that he was allergic to certain components in his cholesterol medication and that Defendants, despite knowing Plaintiff was not responding to his medication and exhibiting signs and symptoms of high cholesterol, persisted in prescribing the same. Plaintiff further alleges that as a direct result of Defendants' failure to address Plaintiff's complaints concerning his medication, he suffered impaired vision.

> In *Chessie Logistics Co. v. Krinos Holdings, Inc.*, the Seventh Circuit explained:
>
> When a new argument is made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far. In the former situation, the plaintiff may be attempting in effect to amend its complaint, and the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims. In the latter, the court should consider the consequences of allowing the plaintiff's new theory.

867 F.3d 852, 860 (7th Cir. 2017). In other words, "although a plaintiff generally can alter the legal theories asserted in its complaint, it cannot alter the factual basis of its complaint at summary judgment. Such an alteration would be an unacceptable attempt to amend the pleadings through summary judgment." *BRC Rubber & Plastics, Inc. v. Continental Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018) (internal citations and quotations omitted).

The Court agrees with Defendants insofar as it appears Plaintiff has significantly altered his factual theory of this case. Indeed, in Plaintiff's Amended Complaint, the allegations focused

on Plaintiff's alleged allergy to his cholesterol medication (*see* Doc. 44 at ¶¶ 24, 28, 32).   Plaintiff claims that Defendants continued to prescribe a medication and increased the dosage of the same, despite his complaints of pain and discomfort, without performing an evaluation to determine if Plaintiff was allergic to the prescribed medication.   Plaintiff alleged that as a result of Defendants' failure to address his complaints, he suffered blindness in his left eye.   Notably, the Amended Complaint makes no mention of Plaintiff refusing to take his prescribed medication or Defendants' knowledge of the same.   Yet, in response to Defendants' summary judgment motion, Plaintiff makes no argument concerning an allergy, arguing instead that Defendants ignored Plaintiff's complaints of pain and his inability to take his prescribed medication.   Plaintiff now contends that because Plaintiff was unable to take his prescribed medication, his blood pressure and cholesterol were uncontrolled and such conditions caused or contributed to cause his retinal artery occlusion. Thus, as argued by Defendants, Plaintiff is attempting to simultaneously argue that he took his prescribed medication that caused his injury, and, if he did not take the medication, then the lack of medication caused his injury.   Although Defendants' argument is well taken, the Court will consider the merits of Plaintiff's response in light of the fact that he was *pro se* at the time this case was filed and, if construed broadly, the allegations in the Amended Complaint may support Plaintiff's theory of liability insofar as Plaintiff alleged that Defendants knew he suffered from high cholesterol and that he was not responding to medication and, as a result of their failure to address his complaints, he suffered impaired vision.

In considering the merits of Plaintiff's claim, the Court must first determine whether Plaintiff suffered from a serious medical need. Defendants contend the medical need at issue is Plaintiff's purported statin allergy and argue that because he did not suffer from any such allergy there is no serious medical need to consider.   Plaintiff, on the other hand, characterizes his serious

medical need as chronic high cholesterol. The Court agrees with Plaintiff and finds the serious medical need at issue is his chronic high cholesterol. The Seventh Circuit has remarked that chronic or degenerative conditions that cause harm that may escalate and have significant future repercussions unless adequately treated, like high cholesterol, are serious medical needs. *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016). Indeed, in *McDonald*, the Seventh Circuit noted that custodians are not excused from ensuring adequate treatment for inmates with chronic or degenerative conditions simply because any resulting harms may remain latent or have not yet reached the point of causing acute or life-threatening injuries. *Id.* Because Plaintiff suffered from chronic high cholesterol that required regular monitoring and medication, the Court finds Plaintiff suffered from a serious medical need. The Court next considers whether Defendants acted with deliberate indifference to Plaintiff's high cholesterol.

### 1. Dr. David

Defendant Dr. David contends summary judgment in his favor is warranted because he did not prescribe, increase, or direct any change in Plaintiff's cholesterol medication in any way before December 5, 2015. Plaintiff contends Dr. David was deliberately indifferent to his high cholesterol because he should have been aware of Plaintiff's inability to tolerate his cholesterol medication and known that his cholesterol was therefore uncontrolled.

The evidence, when viewed in Plaintiff's favor, establishes that Dr. David approved a series of blood pressure readings for Plaintiff in August 2014 and provided a verbal order for Zocor on January 23, 2015. It is apparent that Dr. David's treatment of Plaintiff prior to December 5, 2015 was limited. Plaintiff asserts that because Dr. David would have had access to Plaintiff's entire medical record and should have reviewed the same, he should have known Plaintiff's blood pressure and cholesterol were not well-controlled because he was not tolerating his medication.

Plaintiff's argument fails.    Although Dr. David's involvement in Plaintiff's treatment was limited prior to December 5, 2015, the evidence demonstrates that Dr. David acted to address Plaintiff's high blood pressure and high cholesterol.    There is no evidence that Plaintiff ever notified Dr. David that he was not tolerating his medications or that any purported intolerance was causing him to refuse the same.    Plaintiff's attempt to establish that Dr. David should have known about his medication complaints that were documented in his medical record is insufficient to establish deliberate indifference.    The only documented complaints concerning side effects of Plaintiff's cholesterol medication occurred *after* Dr. David issued any orders relevant to this case.    Insofar as Dr. David should have seen that Plaintiff's medical records included medication refusals signed by Plaintiff, these refusals would have evidenced no more than non-compliance and Dr. David's failure to investigate further would amount to no more than mere negligence (at the very most). *See Williams v. Guzman*, 346 F. App'x 102, 105 (7th Cir. 2009) ("With no evidence that the doctors knew about the [nurse's note for medical follow-up] and deliberately disregarded it, failure to review the nurse's note is at most negligence, which is insufficient to establish deliberate indifference.").    Because there is no evidence in the record establishing that Dr. David acted with deliberate indifference to Plaintiff's high cholesterol, Dr. David is entitled to judgment as a matter of law.

## 2.  Nurse Practitioner Woods

The evidence viewed in Plaintiff's favor establishes that Defendant Woods examined Plaintiff on six occasions from December 29, 2014 until the date of his ocular occlusion on December 5, 2015.    During these examinations, Defendant Woods was made aware that Plaintiff was not taking his cholesterol prescription as prescribed.    On at least one occasion, April 16, 2015, Plaintiff indicated that he was not taking his medication because he was experiencing body aches.

Despite Plaintiff's complaints, Defendant Woods increased Plaintiff's Zocor dosage on April 16, 2015. Plaintiff contends this is the most egregious example of Defendant Woods' deliberate indifference. Plaintiff further contends that Defendant Woods was deliberately indifferent in failing to meaningfully modify Plaintiff's treatment prior to December 5, 2015 and in disregarding IDOC treatment protocols.

First, the Court finds that any argument Defendant Woods was deliberately indifferent in failing to adhere to IDOC treatment protocols for statin therapy or heed warning labels concerning myopathy is misplaced. There is no evidence here that Plaintiff suffered from myopathy and there is no allegation that any side effects from the Zocor therapy directly caused Plaintiff an injury at issue in this lawsuit.

The Court next considers Plaintiff's arguments concerning Defendant Woods' persistence in a course of a treatment known to be ineffective. Notably, Defendant Woods treated Plaintiff's high cholesterol for less than one year prior to him suffering his ocular occlusion, seeing him on approximately six occasions. Defendant Woods advised Plaintiff to take his medication as prescribed and attempted to address his complaints of body aches by advising him to take his prescription at night. During this time, and more than one month prior to Plaintiff suffering his occlusion, Woods changed his treatment regimen, changing Plaintiff's prescription from Zocor to Pravachol. Less than one month before his ocular occlusion, Plaintiff told Defendant Woods that he was tolerating the Pravachol better than the Zocor and his cholesterol levels were stable.

While Plaintiff clearly disagrees with Defendant Woods' course of treatment, it is well-established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes*

*v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

The evidence here is simply insufficient to establish that Defendant Woods' treatment of Plaintiff's high cholesterol was "blatantly inappropriate." Indeed, there is no evidence that Defendant Woods acted without reasoned medical judgment in prescribing Zocor and attempting to address Plaintiff's compliance issues. Specifically, in regards to his decision to increase Plaintiff's prescribed dose of Zocor on April 16, 2015, Defendant Woods testified that the risks of uncontrolled cholesterol were more pressing than Plaintiff's complaints of body aches as he was showing no signs of myopathy (Doc. 67-10 at 23-25). Further, Woods changed his course of treatment in October 2015, and Plaintiff appeared to tolerate this change in prescription. Because there is no evidence that Defendant Woods' treatment decisions were without medical judgment, he is entitled to judgment as a matter of law[2].

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 66) is

---

[2] The Court notes that Plaintiff filed a motion for leave to file a second amended complaint on April 1, 2019 (Doc. 83). The filing of this motion does not affect the Court's ruling here as Plaintiff is merely attempting to incorporate the evidence he relied on in opposing summary judgment into his complaint. Said motion will be moot when judgment is entered in this case.

**GRANTED**.   The Clerk of Court is directed to enter judgment against Plaintiff Gregory Scott and

in favor of Dr. David and Nurse Blake.

**IT IS SO ORDERED.**

**DATED: April 3, 2019**


s/  *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**